UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| WNY MARITIME CHARTER SCHOOL,<br><br>Plaintiff,<br><br>v.<br><br>KREYCO INC., d/b/a LANGUAGE LEARNING NETWORK,<br><br>Defendant. | ) | Case No. 1:25-cv-00453-GWC |

**ORDER ON MOTION TO DISMISS**
**(Doc. 8)**

On April 30, 2025, WNY Maritime Charter School (the "School") filed suit in New York state court against its vendor Kreyco Inc., d/b/a Language Learning Network ("LLN") for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and other theories.[1] The allegations in the complaint concern LLN's conduct in spring 2025 and its decision in April 2025—before the end of the school year—to cease providing language instructors at the School. (*See* Doc. 1-1.) After removing the case to this court (Doc. 1), defendant LLN filed a motion (Doc. 8) seeking dismissal on two grounds: (1) forum non conveniens based on a forum-selection clause that appears in the parties' agreement; and (2) the forum-shopping exception to the first-filed venue rule. According to LLN, the action should proceed in the case that LLN filed against the School in the District of New Jersey on May 23, 2025: *Kreyco Inc. v. Western New York Maritime School*, No. 2:25-cv-5434 (D.N.J.). The School opposes the motion (Doc. 10), and LLN has filed a reply (Doc. 11).

[1] Including a claim for denial of the School's students' rights to an education as guaranteed by the New York State Constitution. (Doc. 1-1 at 11, ¶ 65.)

**Background**

LLN's motion is brought under Fed. R. Civ. P. 12(b)(6), which ordinarily precludes the court's consideration of materials outside the pleadings. *See* Fed. R. Civ. P. 12(d); *see also, e.g.*, *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991) ("Rule 12(b)(6) does not give the district court authority to consider matters outside the pleadings; it simply delineates the procedures which must be followed in testing the legal sufficiency of a complaint."). However, the court can properly consider materials outside of the pleadings in addressing the aspect of LLN's motion based on the forum non conveniens doctrine. *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 697 n.1 (2d Cir. 2009). Similarly, this court has analyzed "first-filed-rule" or "prior pending action" arguments under Fed. R. Civ. P. 12(b)(3), which likewise permits consideration of extra-pleading materials. *Lux v. Hultquist*, No. 24-CV-783, 2026 WL 879185, at *6 & n.10 (W.D.N.Y. Mar. 31, 2026) (noting that the first-filed inquiry is a venue issue; citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010)); *Pro-Fac Coop., Inc. v. Alpha Nursery, Inc.*, 205 F. Supp. 2d 90, 94 n.1 (W.D.N.Y. 2002) (analysis under Rule 12(b)(3) "permits the district court to consider facts outside the pleadings"). The following facts are therefore drawn from the court's review of the pleadings and the additional materials that the parties have presented.

**The Parties and Their Agreements**

WNY Maritime Charter School is a New York education corporation that operates a charter school in Buffalo, New York. (Doc. 1-1 at 4, ¶ 1; *id.* at 5, ¶ 6.) LLN is a New Jersey corporation that "partners with public and private schools across the country to provide access to qualified language instructors." (Sean Kreyling Aff., Doc. 8-3 ¶ 2; *see also* Doc. 1-1 at 5, ¶ 7.) In November 2023, the School and LLN entered into a services agreement under which LLN

agreed to provide Spanish language instruction at the School for the 2023–2024 school year. (Doc. 8-3 ¶ 3.)

The School and LLN entered into another services agreement dated March 19, 2024, effective that date through June 30, 2025. (Doc. 1-1 at 17–18.) Under that agreement for the 2024–2025 school year, LLN (as the "Vendor") agreed to provide "weekly onsite instructional services, consisting of 1 Teacher" to teach "Spanish/ESL" at the School. (*Id.* at 22.) The School agreed to pay a total of $108,000 to LLN for these services. (*Id.* at 17, 22.) The 2024 agreement also included the following terms:

> **9. Suspension of Services.** If School breaches any term(s) of this Agreement, Vendor has the right to suspend delivery of Services until School has cured such breach(es) to Vendor's reasonable satisfaction. Vendor must provide School at least ten (10) days' advance written notice prior to suspending Services ("Suspension Notice"). . . .
>
> **10. Termination.** This Agreement may be terminated as follows: (a) upon the natural expiration of the Term, provided that one of the parties has issued a timely Renewal Termination Notice, in accordance with the terms herein; (b) by School upon thirty (30) days' prior written notice to Vendor; or (c) by Vendor in the event School fails to cure a breach within thirty (30) days' receipt of a Suspension Notice.
>
> **11. Stipulated Damages.** In the event . . . Vendor exercises its right to terminate under Section 10(c), School surrenders its claim to any and all refunds or financial credits and shall be responsible for all remaining monthly payments . . . in addition to any and all past due invoices and any fees or costs payable to Vendor . . . .
>
> **17. Non-Solicitation.** During the Term of this Agreement, including any and all renewal terms, and for a period of one (1) year thereafter (the "No Hire Period"), neither School nor any affiliate, agent, or representative thereof shall, directly or indirectly, hire, contract, or solicit for employment, contract, or engagement, or cause or arrange for another individual or entity to hire, contract, or solicit for employment, contract, or engagement, any person who is or was a Teacher contracted or employed by Vendor to perform Services during the Term of this Agreement. School agrees that the covenant contained in this paragraph is reasonable in all respects. In the event this provision is violated or breached, Vendor shall be entitled to immediate injunctive relief against School, its affiliates, and/or agents, prohibiting further actions in violation of the terms herein, and School shall pay Vendor $108,000.00 per violation as liquidated damages. This amount is not a penalty and represents the value of Vendor's economic loss of one (1) Teacher. The Parties hereby acknowledge that payment of these liquidated

> damages is reasonable and shall be due within thirty (30) days of School's breach of this paragraph. . . .
>
> **21. Forum Selection.** The Parties agree to the personal jurisdiction and exclusive venues of the Superior Courts of New Jersey and the United States District Court for the District of New Jersey in any action arising from or related to this Agreement. The Parties hereby waive all defenses based upon the selection of jurisdiction and forum and agree to service of process by certified mail, return receipt requested, and/or overnight delivery by a nationally recognized carrier.

(Doc. 1-1 at 18–20.) Sean Kreyling signed the 2024–2025 Agreement as LLN's CEO; Dr. Ami Alderman signed as the School's Superintendent. (*Id.* at 21.)

On February 21, 2025, an LLN representative contacted Dr. Alderman regarding a renewal of the agreement for the 2025–2026 school year. (Doc. 10-3 at 3, ¶ 6.) On February 25, 2025, Dr. Alderman advised LLN that, for budgetary reasons, the School did not intend to renew the Agreement for the 2025–2026 school year. (Doc. 1-1 at 5, ¶ 10; Doc. 10-3 at 3, ¶ 7.)

**LLN Contractor Christina Suarez**

Meanwhile, on February 24, 2025, LLN contractor Yara Juarez informed LLN that she was "getting physically and verbally assaulted by several WNY Maritime students, who had been continuously throwing dangerous objects at her, including their chairs." (Doc. 10-6 at 6, ¶ 22.) Ms. Juarez terminated her independent contractor agreement with LLN on that date. (*Id.* ¶ 24.) LLN had to find a replacement contractor. (*Id.* ¶ 25.) The new contractor was Christina Suarez. (*See* Doc. 10-4 ¶¶ 6–7.)

The School's Vice Commandant and Director of Administrative Services, William Vasquez, is himself a Spanish speaker, and he developed a friendly work relationship with Ms. Suarez, periodically conversing with her in Spanish. (*Id.* ¶ 6.) In late February or early March 2025, Ms. Suarez advised Mr. Vasquez that she was pregnant. (*Id.* ¶ 7.) He congratulated her and they discussed "how the timing would coincide with a summer birth." (*Id.* ¶ 8.)

Ms. Suarez and Mr. Vasquez had another conversation later that day, which "turned to the expense of having children and daycare." (*Id.* ¶¶ 9–10.) During that conversation, Ms. Suarez mentioned the Family Medical Leave Act ("FMLA"), and—according to Mr. Vasquez—he noted that School employees have FMLA coverage in the case of pregnancy; he recommended that she "look into what coverage she had from her employer." (*Id.* ¶ 12.) According to Mr. Vasquez, Ms. Suarez also mentioned that FMLA coverage was unlikely to be relevant for her because she and her husband intended to move to Spain for assistance raising their children and family there. (*Id.* ¶ 13.) Mr. Vasquez asserts that his position at the School does not include hiring or firing authority, and that he "did not offer Ms. Suarez any benefits, nor did I offer her a position with the school." (*Id.* ¶¶ 14–15.) The School likewise maintains that it "has not, nor attempted to, hire, contract or solicit for employment any of [LLN's] employees." (Doc. 1-1 ¶ 13.)

**LLN Claims Breach of Non-Solicitation Provision**

On the morning of Thursday, March 20, 2025, Mr. Kreyling sent Dr. Alderman the following email:

> This email is to inform you of a material breach of our services agreement (SA). Although our SA clearly prohibits the solicitation of our teachers for employment, we have received written confirmation that your district has intentionally solicited one or more of our teachers and encouraged them to find a way to circumvent this prohibition. . . .
>
> Pursuant to the non-solicitation provision of our SA, your district must pay LLN liquidated damages in the amount of $108,000 *within 30 days of this breach.* Although we are entitled to these liquidated damages, we would—as an act of good faith—like to propose the renewal of your current services rather than engage in litigation.
>
> Although it goes without saying, the district is not to address our teacher(s) about this matter. Please let us know, by the end of this week, if you are amenable to the proposed alternative to liquidated damages/litigation. . . .

(Doc. 10-3 at 17.) The School's attorney phoned Mr. Kreyling later that morning. (*See id.* at 19.)

In another email that day to Dr. Alderman at 12:02 p.m., Mr. Kreyling described the phone call with the attorney as "unproductive and disappointing." (*Id.*) He advised Dr. Alderman: "[Y]our unwillingness to address this material breach of our SA will result in legal action as well as the suspension of our services." (*Id.*) Citing § 9 of the parties' agreement, Mr. Kreyling further advised: "[T]he district has ten (10) days to cure the foregoing breach—to LLN's reasonable satisfaction—before LLN suspends it services" and that "Furthermore, if the district fails to cure the foregoing breach within thirty (30) days, LLN reserves the right to terminate the SA and enforce the stipulated damages clause therein." (*Id.*)

On Monday, March 24, 2025, Dr. Alderman replied to Mr. Kreyling with the following email:

> Thank you for your email regarding the alleged breach of the services agreement. Please allow me to clarify that WNY Maritime Charter School has not intentionally or unintentionally solicitated any of your teachers, nor have we encouraged anyone to circumvent the terms outlined in the agreement.
>
> Further, in alignment with our internal protocols, the specific language and nature of your email triggered our standard operating procedures, which require immediate referral to our legal team. The outreach you received from our attorney was not adversarial in nature, but rather a procedural response based on the wording of your communication. I trust you can appreciate that, like LLN, we have protocols and legal obligations that must be followed in such situations.
>
> We take our partnerships seriously and value the trust and professionalism that are foundation to our work together. We are committed to addressing this matter respectfully and appropriately, and welcome the opportunity to work through it in good faith.

(Doc. 10-3 at 21.) Dr. Alderman provided her cellular phone number and stated, "I hope that we can find resolution." (*Id.*)

Dr. Alderman and Mr. Kreyling spoke by telephone on March 25, 2025. According to Dr. Alderman:

> The focus of the telephone conversation was not the purported breach of the non-solicitation, but, rather, largely the school's decision not to renew the relationship for the 2025–2026 school year and Mr. Kreyling's criticism of my handling of an unrelated incident involving one of the onsite instructors allegedly having water thrown on them by a student.

(Doc. 10-3 at 4, ¶ 15.) Dr. Alderman further states that, during the telephone conversation, "Mr. Kreyling only briefly referenced what, it had finally come to my understanding, is the purported breach of the non-solicitation provision—a conversation between SFC William Vasquez (of Maritime) and Christina Suarez (one of LLN's onsite instructors)." (*Id.*)

On March 28, 2025, LLN's counsel Melissa Hordichuk emailed a letter to the School stating in pertinent part:

> It has come to my attention that, on or around March 14, 2025, WNY Maritime directly solicited an LLN teacher, Cristina Suarez, for employment. As you know, WNY Maritime expressly agreed that, in the event of its breach of the Non-Solicitation Clause, the school would pay LLN liquidated damages in the amount of $108,000.00 within thirty days of its breach.

(Doc. 10-7 at 6.) The letter further stated: "If WNY Maritime fails to pay these liquidated damages to LLN in full by Monday, April 14, 2025, my client reserves the right to suspend services and take immediate legal action against the school." (*Id.*) Dr. Alderman forwarded Ms. Hordichuk's letter to the School's counsel, Jill Cassert. (*Id.* at 3.) Ms. Hordichuk emailed Ms. Cassert directly on April 9, 2025, seeking to confirm that Ms. Cassert had received the March 28 letter. (*Id.* at 2.)

Mr. Kreyling emailed Dr. Alderman on April 14, 2025, and advised: "Although our attorney has made multiple attempts to contact Ms. Cassert, she has yet to make any effort to address this matter." (*Id.* at 23.) Mr. Kreyling further stated:

> To date, the district has made no attempt to cure its material breach of contract or pay the agreed-upon liquidated damages. LLN is hereby providing an official Suspension Notice (pursuant to Section 9 of the services agreement). If the district fails to cure its breach to LLN's reasonable satisfaction within 10 days, LLN will cease services on 4/25/25 and take immediate legal action.

(*Id.*) Mr. Kreyling emailed again on April 24, 2025, stating: "As a professional courtesy, I am writing to inform you that neither Cristina nor Mark will be reporting to school tomorrow. Your purported attorney has made it impossible to remedy this matter. We will address this matter in court." (*Id.* at 25.) LLN thereafter "pulled [its] onsite instructors with less than two months remaining in the school year." (Doc. 1-1 at 6, ¶ 17.)

**Litigation**

On April 30, 2025, the School filed a Verified Complaint against LLN in New York Supreme Court on multiple theories—including breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing—arising out of LLN's conduct and ultimate suspension of its services. (*See* Doc. 10-2.) LLN and its counsel Ms. Hordichuk first learned of that lawsuit on May 22, 2025, when they received an email from the School's counsel, Ms. Cassert, with copies of the summons and complaint attached. (Doc. 8-4 ¶ 9; Doc. 10-5 at 2–3.)

Ms. Hordichuk responded by email later that morning, asserting that the parties' forum-selection clause limited jurisdiction and venue to New Jersey, and advising: "I have already prepared a Complaint to file in the District of New Jersey. If you do not withdraw this matter from Erie County by 5pm today, I will send a formal Rule 11 letter." (*Id.* at 2.) Ms. Hordichuk also attached a copy of a "Notice of Claim," advising the School that LLN "intends to file claims" against the School "for breach of contract and fraudulent misrepresentation." (*Id.* at 4.) The next day, on May 23, 2025, LLN filed suit against the School in the United States District

Court for the District of New Jersey. Compl., *Kreyco Inc. v. W.N.Y. Mar. Sch.*, No. 2:25-cv-5434 (D.N.J. May 23, 2025), ECF No. 1.[2]

On May 27, 2025, the School effected service of process on LLN in the New York Supreme Court action. (Doc. 8-4 ¶ 12.) On the same date, LLN removed that action to the United States District Court for the Western District of New York. (Doc. 1.) On May 30, 2025, LLN effected service of process on the School in the New Jersey action. (*Id.* ¶ 13.) The federal court in New Jersey has stayed the action in No. 25-cv-5434 pending disposition of the motion to dismiss in this court. (Doc. 10-8.)

## Analysis

Both of LLN's arguments for dismissal—forum non conveniens and the venue argument—are "close[ly] associate[ed]," and they both raise "a threshold, non-merits issue." *Chevron U.S.A. Inc. v. Env't Prot. Agency*, 45 F.4th 380, 385 (D.C. Cir. 2022). Because forum non conveniens is "essentially, a supervening venue provision," *id.* (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007)), the court elects to begin there.

## I. Forum Non Conveniens

"The doctrine of *forum non conveniens* is 'a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim.'" *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000)).

> Under the doctrine, when an alternative forum has jurisdiction to hear a case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative

[2] Reproduced on this court's docket at Document 10-6.

> and legal problems, the court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are established.

*Id.* (cleaned up). In cases that do not involve forum-selection clauses, the forum non conveniens analysis generally proceeds with an assessment of "(1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum." *Rabinowitz v. Kelman*, 75 F.4th 73, 80 (2d Cir. 2023) (quoting *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019)).

However, where, as here, parties have entered into a contract with a forum-selection clause, forum non conveniens is the proper procedural mechanism for enforcing the clause, and "the forum selection clause substantially modifies the *forum non conveniens* doctrine." *Id.* at 81 (quoting *Yu Yu*, 921 F.3d at 335). "The 'usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum.'" *Id.* (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014)). Still, the presumption may be overcome: "A court may decline to enforce a forum selection clause in the rare case where the resisting party satisfies the heavy burden of showing that 'it would be unfair, unjust, or unreasonable to hold that party to his bargain.'" *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)).

The Second Circuit has articulated "a four-part framework when determining whether to dismiss a claim based on a forum selection clause under the modified doctrine of *forum non conveniens*." *Id.*

> At the first three steps, the court asks (1) "whether the clause was reasonably communicated to the party resisting enforcement," (2) "whether the clause is mandatory," that is, whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so, and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause."

*Id.* (quoting *Martinez*, 740 F.3d at 217). "If the answer to all three questions is yes, the clause is 'presumptively enforceable.'" *Id.* (quoting *Martinez*, 740 F.3d at 217). "At the fourth step, the court asks (4) whether the resisting party has rebutted that presumption by 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (quoting *Martinez*, 740 F.3d at 217).

Here, the School does not dispute the first three elements of the applicable four-part framework. The court therefore concludes that the parties' forum-selection clause is "presumptively enforceable." However, the School suggests that LLN should be "precluded" from invoking the forum-selection clause because LLN breached the contract when it halted the teaching services provided for in that contract. (Doc. 10-1 at 8–9.) In support, the School cites *Nadeau v. Equity Residential Properties Management Corp.*, 251 F. Supp. 3d 637 (S.D.N.Y. 2017).

The court finds the School's "preclusion" argument unpersuasive. The *Nadeau* court observed that, "[u]nder New York law, when a party to a contract materially breaches that contract, it cannot then enforce that contract against a non-breaching party." *Id.* at 641. Here, however, the court at this stage of the case is not applying New York state law or evaluating the merits of the parties' dispute but is instead applying federal forum non conveniens law. Moreover, the cited *Nadeau* decision says nothing about forum non conveniens, and other cases confirm that the merits of a breach-of-contract claim do not affect the enforceability of a forum-selection clause. *See, e.g.*, *Smart Recovery Techs. LLC v. Supplies Plus MI LLC*, No. 24-cv-7406, 2026 WL 787788, at *6 (S.D.N.Y. Mar. 30, 2026) ("[W]hether Plaintiff has stated a claim for contractual breach or not has no bearing on the enforceability of the forum selection clause.").

The court therefore proceeds to the fourth step of the applicable framework, asking whether the School has met its burden to show that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Martinez*, 740 F.3d at 217. The Second Circuit has described four circumstances where this might be true:

> (1) [the forum selection clause's] incorporation was the result of fraud or overreaching, (2) the law to be applied in the selected forum is fundamentally unfair, (3) enforcement contravenes a strong public policy of the forum in which suit is brought, or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Rabinowitz*, 75 F.4th at 81 n.6 (quoting *Martinez*, 740 F.3d at 227–28). The court considers the School's arguments and evidence as to each of these circumstances in turn.

### A. Fraud or Overreaching

The School points to two other litigations that it describes as "eerily similar" to the circumstances here. (Doc. 10-1 at 11.) In the School's view, these two other cases—*Kreyco Inc. v. Franklin Township Board of Education*, No. BER-L-001541-23 (N.J. Super. Ct.), and *East Ramapo Central School District v. Kreyco Inc.*, No. 25-cv-03319 (S.D.N.Y.)—indicate that LLN "appears to be engaged in a pattern of failing to fully perform their obligations under agreements with schools, and then pursuing claims or counterclaims relying on acceleration or liquidated damages clauses seeking sums far in excess of actual damages incurred." (Doc. 10-1 at 12.)

Neither of these cases has resulted in a court ruling on the merits. *See* Order of Dismissal, *E. Ramapo Cent. Sch. Dist.*, No. 25-cv-03319 (S.D.N.Y. Nov. 19, 2025) (settlement); *Kreyco Inc. v. Franklin Twp. Bd. of Educ.*, No. A-3589-22, 2024 WL 3421621, at *5 (N.J. Super. Ct. App. Div. July 16, 2024) (per curiam) (instructing trial court to "refer[] the statutory issues to the Commissioner [of Education] and [to] stay[] the remainder of the proceedings pending the Commissioner's decision"). The court cannot conclude that the existence of these other proceedings is sufficient to meet the School's burden to show fraud or overreaching in the

inclusion of the forum-selection clause. The School does not urge a contrary conclusion and instead notes that it "does not allege fraud as to the inclusion of the forum selection clause in the Agreement." (Doc. 10-1 at 11.)

**B. Fundamentally Unfair Law in Selected Forum**

The School asserts that litigation in New Jersey would deprive the school of its rights under two provisions of New York law: Education Law § 3813, and General Municipal Law § 50-h. (Doc. 10-1 at 13–14.) LLN maintains that the School has failed to show how application of New Jersey law might deprive the School of a remedy to its claims. (Doc. 11 at 9.)

**1. Choice of Law**

The court begins by noting that, while the parties' agreement contains a forum-selection clause, it does not include a choice-of-law provision.[3] Absent a choice-of-law provision, the federal court will apply the forum state's choice-of-law rules. *See Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 467 (2d Cir. 2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). If the case were to proceed here, this court would apply New York conflict-of-law analysis, seeking to determine if there is a conflict between New York and New Jersey law, and then applying New York's "center of gravity" or "grouping of contacts" theory. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016). If the case were to proceed in the District of New Jersey, that court would apply New Jersey conflict-of-law analysis, which, like the New York analysis, involves first determining whether there is an actual conflict of law, and then determining which jurisdiction

[3] The agreement does reference "applicable state law" as governing criminal background checks that LLN was required to perform for its teachers. (Doc. 1-1 at 19, ¶ 16.) Such applicable state law might be New York law, but ¶ 16's provision regarding criminal background checks is not a choice-of-law provision.

has the "most significant relationship" to the claim. *Colony Ins. Co. v. Aspen Specialty Ins. Co.*, 564 F. Supp. 3d 353, 349–50 (D.N.J. 2021).

It appears that the outcome of this analysis would likely be the same in both New York and New Jersey, and it is not clear that the District of New Jersey would conclude that New Jersey law would apply. Assuming that there is a conflict of substantive law,[4] New Jersey conflict-of-law analysis would focus on the jurisdiction with the most significant relationship—likely New York, since that is the jurisdiction where the contract was performed. *Cf. Int'l Foodsource, LLC v. Grower Direct Nut Co.*, No. 16-cv-3140, 2016 WL 4150748, at *10 (D.N.J. Aug. 3, 2016) (New Jersey choice-of-law rules favored application of California substantive law, particularly because the contracts specified California as the place of performance, the subject matter of the contracts were in California, and no other factors favored application of New Jersey law). It therefore appears unlikely that litigation of this dispute in the District of New Jersey would deprive the School of any rights under New York substantive law. Moreover, for the reasons discussed below, even assuming that the District of New Jersey determined to apply New Jersey substantive law, the court is not persuaded that litigation in that forum would subject the School to the application of fundamentally unfair law.

[4] The School relies on New York Education Law § 3813 and New York General Municipal Law § 50-h, neither of which appear to exist in New Jersey law. LLN asserts that the protections of these New York laws are both "moot" as to the School in this case. (Doc. 11 at 8.)

### 2. New York Education Law § 3813 and General Municipal Law § 50-h

The School asserts that application of New Jersey law would deprive the School of its rights under New York Education Law § 3813, regarding the presentation of claims:

> No action or special proceeding, for any cause whatever, except as hereinafter provided, relating to district property or property of schools provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four or claim against the district or any such school, or involving the rights or interests of any district or any such school shall be prosecuted or maintained against any school district, board of education, board of cooperative educational services, school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four or any officer of a school district, board of education, board of cooperative educational services, or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment

N.Y. Educ. Law § 3813(1). When a notice of claim such as one required by § 3813(1) is filed against a school district, the district "shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made." N.Y. Gen. Mun. Law § 50-h(1). The School asserts that the lack of a notice of claim also deprived it of the right to examine under § 50-h(1).

LLN argues that the School has already received a copy of LLN's notice of claim. (Doc. 11 at 8.) And LLN further contends that the School cannot complain of a deprivation of the right to examine under § 50-h(1) because "Plaintiff has yet to serve LLN's counsel a written demand for examination" under that provision. (*Id.*) The School maintains that LLN improperly filed its suit in the District of New Jersey the day after presenting the notice of claim to the School on May 22, 2025, without awaiting the 30-day period specified in § 3813(1). (Doc. 10-1 at 13–14.)

The court concludes that the parties' disputes on these points are immaterial. As stated in the complaint, the School is a charter school and thus operates independently of existing New York schools and school districts. N.Y. Educ. Law § 2580(2). The School is also not one of the schools provided for in article 85 or in chapter 1060 of the laws of 1974 (schools for the instruction of the deaf and blind). Although some federal cases have apparently interpreted the phrase "school district" in § 3813 to include charter schools for purposes of the notice-of-claim requirements, New York courts have recently held otherwise. *See, e.g.*, *Greenberg v. Seton Educ. Partners*, 227 N.Y.S.3d 870, 877 (N.Y. Sup. Ct. 2025) (citing *A.P. v. John W. Lavelle Preparatory Charter Sch.*, 228 A.D.3d 138, 146–48, 210 N.Y.S.3d 246 (2d Dep't 2024)). Even assuming that § 3813(1) applies to actions brought in jurisdictions outside New York, the suit that LLN filed in the District of New Jersey does not deprive the School of any rights under § 3813(1) or § 50-h(1) because those provisions do not apply to charter schools.

### C. Public Policy

The School asserts that public policy favors the Western District of New York for three reasons: to vindicate the School's rights under New York law; because the School has brought a claim under the New York State Constitution; and because the claims relate to "the educational rights of Plaintiff's students." (Doc. 10-1 at 14.) LLN maintains that the School has failed to show that enforcement of the forum-selection clause "would contravene a sufficiently strong public policy of New York." (Doc. 11 at 9.)

For the reasons stated above, litigation in the District of New Jersey would not deprive the School of rights under § 3813(1) or § 50-h(1) because those provisions do not apply to charter schools. As for the cause of action under the New York State Constitution (*see* Doc. 1-1 at 11, ¶¶ 64–66), it is not clear how the School would be the real party in interest to bring a claim

that appears to be seeking to vindicate its *students'* rights under the New York Constitution; those claims would appear to belong to the students, not to the School. *See* Fed. R. Civ. P. 17(a)(1) (real party in interest). To the extent it might be necessary for the District of New Jersey to adjudicate the School's claim under the New York Constitution, the court perceives no overriding public policy concern. The federal courts in New York might be naturally more familiar with New York law, but the District of New Jersey would have supplemental jurisdiction to adjudicate a claim under the New York Constitution. *See* 28 U.S.C. § 1367.

Finally, the court acknowledges that there is a public policy interest for a New York-based court to adjudicate the rights of New York students. But the bulk of this case is about an (overheated) contract dispute between an educational institution and a vendor of educational services. The court is not persuaded that the collateral impacts on the School's students are a sufficiently strong public policy basis to override the parties' choice of a New Jersey forum.

**D. Difficulty or Inconvenience of Trial in Selected Forum**

The final consideration in the modified forum-non-conveniens analysis is whether "trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Rabinowitz*, 75 F.4th at 81 n.6 (quoting *Martinez*, 740 F.3d at 227–28). The School asserts two arguments as to why litigation in the District of New Jersey might effectively deprive it of its day in court. First, the School again refers to the alleged deprivation of its rights under § 3813(1) or § 50-h(1). (Doc. 10-1 at 15.) The court rejects that argument because, as discussed above, those provisions do not apply to charter schools.

Second, the School asserts that litigation in the District of New Jersey would deprive it of "the testimony of key, non-party witnesses." (*Id.*) According to the School: "[W]ith the exception of Mr. Kreyling, all anticipated witnesses reside in the Western New York Area. This

includes Ms. Suarez, who would seem to be the *key* witness in this case . . . ." (*Id.* at 19.) The School argues that "[t]hese witnesses would not be subject to having their testimony compelled if the dispute between these parties proceeded in the District of New Jersey." (*Id.* at 20.) LLN counters that the School's agreement to the forum-selection clause means that the school has "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013).

The *Atlantic Marine* Court recognized that it is "conceivable in a particular case" that a court might override the forum the parties selected in their agreement. *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30–31 (1988)). This appears to be a possibility even where the considerations are the parties' private interests in avoiding an unduly difficult or inconvenient forum. If LLN were correct that a forum-selection clause is an insurmountable waiver, there would seem to be little basis for an analysis of whether "trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Rabinowitz*, 75 F.4th at 81 n.6 (quoting *Martinez*, 740 F.3d at 227–28). The court concludes that *Atlantic Marine* does not bar consideration of this factor. The court notes, however, that the analysis under this factor of the modified forum non conveniens test is not an inquiry into whether the selected forum is merely inconvenient or less convenient but is instead an inquiry as to whether the difficulty or inconvenience is so great that it effectively deprives a party of its day in court.

The School's evidence and arguments do not reach that high bar. The key witnesses regarding the alleged breach of the non-solicitation clause are Mr. Vasquez and Ms. Suarez—the two individuals who discussed Ms. Suarez's pregnancy, the question of FMLA benefits, and

(according to LLN) the possibility of her direct employment at the School. But it seems unlikely that the District of New Jersey would need to *compel* Mr. Vasqeuz's testimony. As a School employee, he would presumably testify *voluntarily* in that forum that he never offered Ms. Suarez any benefits or employment.

As for Ms. Suarez, it appears from the evidence that she intended to move (and may have moved) to Spain. If so, it seems that compelling her testimony would be equally difficult for either this court or the District of New Jersey. Moreover, even if Ms. Suarez chose to remain in the Buffalo area (and thus beyond the range of a subpoena from the District of New Jersey under Fed. R. Civ. P. 45(c)), it is difficult to grasp how the School might be prejudiced if *she* could not be compelled to testify. Presumably LLN would seek to call her to attempt to establish that Mr. Vasquez *did* solicit her for employment. If she appeared voluntarily, the School could cross-examine. If she did not appear, then that would presumably be less evidence for LLN to present to attempt to counter the School's evidence against LLN's claims of solicitation.

## II. First-Filed Rule and the Forum-Shopping Exception

LLN's alternative argument for dismissal is its contention that—although the School's complaint of April 30, 2025, was the first to be filed as compared to LLN's suit in the District of New Jersey—the School's alleged "forum shopping" counsels against applying the first-filed rule, and this case should be dismissed in favor of the action in the New Jersey federal court. (*See* Doc. 8-1 at 10.) The court concludes that is unnecessary to address this alternative basis for dismissal because LLN is entitled to dismissal under the modified forum non conveniens doctrine, discussed above.

## Conclusion

Kreyco Inc. d/b/a Language Learning Network's Motion to Dismiss (Doc. 8) is GRANTED insofar as it seeks dismissal on forum non conveniens grounds. Dismissal is without prejudice; the court anticipates that one or both parties will seek reinstatement of the action previously instituted in the District of New Jersey.

Dated in the Western District of New York, this 19th day of August, 2026.

Geoffrey W. Crawford, Judge
United States District Court